280 P.2d 698

**CITY OF PHOENIX, a municipal
corporation, Appellant,**

v.

**Otto H. LINSENMEYER, Appellee.**

No. 5897.

Supreme Court of Arizona.

March 8, 1955.

William C. Eliot, City Atty., George T. Fike, Fred F. Bockmon, James F. Haythornewhite, Asst. City Attys., for appellant.

Bumsted & Linsenmeyer, Phoenix, for appellee.

WINDES, Justice.

In the year 1946 the City of Phoenix, defendant below, entered into a lease with Mrs. Ottilia Linsenmeyer wherein she leased land to the city for the purpose of establishing a veteran's emergency housing project. After the expiration of this lease the same was renewed in 1949 for a term ending June 30, 1952. Mrs. Linsenmeyer passed away on January 2, 1951, and her estate is being administered in the probate court. On December 31, 1951, the city entered into a lease for the same property with Otto H. Linsenmeyer, plaintiff below, and an heir of Mrs. Linsenmeyer. This latter lease expired July 31, 1952. In all the leases it was provided that the city at the expiration of the term or any extension thereof was to remove all emergency housing units placed upon the premises and as near as practicable restore the land to its original condition. The lease also contained the following provision:

"Lessee further agrees that all sewer and water connection used in the operation of said Emergency Veteran's Housing Project on said premises shall remain as installed."

On June 25, 1952, the city entered into a contract with one D. K. Murphy whereby he purchased the units involved in this litigation and agreed to remove the building units. In the process of removal the units were torn down, the plumbing was disconnected and the land left in a condition satisfactory to the lessor. In the course of dismantling the buildings a dispute arose between the city and the plaintiff as to the ownership and right of the city to remove certain pipe and plumbing installations. Plaintiff brought suit against the city for unlawfully removing piping which he claimed should have been left on the premises. The case was tried before a jury resulting in a verdict and judgment against the city in the sum of $6,000. Defendant city appeals.

At the close of the evidence the city moved for a directed verdict upon the ground that the property involved was personal property at the time of Mrs. Linsenmeyer's death and belonged to the estate and the plaintiff, having no right therein, could not bring suit for its removal. Denial of this motion is assigned as error.

When a person dies possessed of personalty and an executor or administrator is appointed, the title thereto is vested in

380

such executor or administrator and an heir, prior to a decree distributing such personal property to him, has no standing in court to sue and recover for the same. In re Tamer's Estate, 20 Ariz. 228, 179 P. 643. Plaintiff does not question this proposition of law but contends that the property involved was real estate in that it had been affixed to the land, and as owner of the soil he owned the pipe and plumbing installations which were removed by the city. The city's position is that the property in dispute was personal property. It therefore becomes necessary to determine whether this pipe and plumbing was personal property or had become a part of the realty by reason of having been affixed to the realty.

In the case of Fish v. Valley National Bank of Phoenix, 64 Ariz. 164, 167 P.2d 107, 111, this court has correctly laid down the general test to determine whether a chattel which has in some manner been affixed to realty shall become a part thereof or retain its status as personalty. Therein we said:

"The rule is that for a chattel to become a fixture and be considered as real estate, three requisites must unite: There must be an annexation to the realty or something appurtenant thereto; the chattel must have adaptability or application as affixed to the use for which the real estate is appropriated; and there must be an intention of the party to make the chattel a permanent accession to the freehold."

In determining the intention of the parties it is proper to consider their relationship to each other. For instance in dealing with a landlord and tenant it has been held that when a tenant affixes chattels to the owner's realty, the presumption is that it is for temporary purposes and, absent an agreement to the contrary, he has the right to remove the same if it can be done without damage to the realty. 22 Am.Jur., Fixtures, section 40. This principle was well said in Armstrong Cork Co. v. Merchants' Refrigerating Co., 8 Cir., 184 F. 199, 208, as follows:

"The line of demarcation between realty and personalty in cases between landlord and tenant is by no means the same as in cases between vendor and vendee and mortgagor and mortgagee, and this for the reason that the relation of landlord and tenant is transitory— the use of the property is by one who is to stay for a limited time, and many articles are placed upon the realty by the tenant which both parties intend shall be removed at the end of the term; while the things placed upon the realty by the vendor or the mortgagor are put there by one whose term of occupancy is ordinarily unlimited and generally with the intention that they shall become a part of the real estate, and that they shall be perpetually and habitually used with it."

In the instant case there are three classes of piping involved. The house units were

what is termed a package unit with pipe built into the walls for the purpose of connecting to the water and sewer when the units are set up for occupancy. There was pipe buried in the ground on the property for the purpose of tapping into the sewer and water lines and there were pipe and connections leading from the terminal of the buried pipe to the fixtures, such as bath, toilet and sink, installed in the houses. The evidence shows the fixtures were stubbed in and pipe was installed from the point of termination of the underground pipe and was run under the floors and connected with the various fixtures. Some of these floors were concrete and some wood. Under the wood floors this piping was strapped to the joists.

Our view is that there is no possibility of construing the lease so as to deprive the city of the right to remove the piping which came installed in the walls of the units. Having the right to remove the units, the city could not be required to destroy the same and take the piping from the walls in order to leave it upon the premises.

The piping buried under the ground is not in dispute, the city conceding that under the terms of the lease it was required to leave this pipe undisturbed and did so. This leaves in dispute only such pipe above the ground leading from the fixture connections to and connected with the underground pipes. If under the terms of this lease this class of plumbing was intended to remain as a permanent accession to the land, it becomes realty. On the other hand, if placed there for a temporary purpose, it remains in the category of a personal chattel. There can be no question that the city placed this piping there for a temporary use for its own convenience in operating an emergency housing project. In the absence of agreement to the contrary it unquestionably retained the status of personalty. We fail to see how there can be gathered from the written terms of the lease or the oral testimony submitted in explanation thereof an intention on anyone's part that this plumbing above the ground for the purpose of connecting fixtures was to remain as a permanent fixture attached to the soil. The city was obligated in removing the houses to leave the land as nearly as practicable in the same condition as before the tenancy. This could not be done without severing this pipe and depriving it of the element of permanency essential to converting a chattel into realty. The piping strapped to the joists would have to be removed. Plaintiff testified that the concrete floors had to be removed. Consequently all of this pipe under the floors would have to be disturbed in removing the houses.

In an effort to establish ownership of this property as realty, plaintiff offered testimony of witnesses who negotiated the leases with Mrs. Linsenmeyer. This evidence shows Mrs. Linsenmeyer never intended to use the piping above ground as a permanent improvement to her land.

382

We are therefore of the view that this connecting pipe above the ground never became a part of the realty. It was personalty from the beginning of the tenancy and if there be a right of recovery, the personal representative is the only one entitled to seek the same.

Reversed with instructions to enter judgment for defendant.

LA PRADE, C. J., and UDALL, PHELPS and STRUCKMEYER, JJ., concur.